COPY

COPY-Original Filed

MAY 18 2020

KLICKITAT CO. CLERK

SUPERIOR COURT OF WASHINGTON FOR KLICKITAT COUNTY

TOOTH ACRES, LLC, a Washington limited liability company; GENE SCHEEL, an individual,

                Plaintiffs,

   vs.

HOODSTOCK RANCH, LLC, a Washington limited liability company; MARK GORDON HERON and MARY KATHLEEN HERON, husband and wife,

                Defendants.

NO. 2 0 - 2 - 0 0 0 7 4 - 2 0

COMPLAINT

Plaintiff alleges:

1.     Plaintiff Tooth Acres, LLC ("plaintiff"), is a limited liability company, organized and operating under the laws of the State of Washington. All required fees have been paid to date, and plaintiff is otherwise competent to bring and maintain this action.

2.     Plaintiff Gene Scheel ("Scheel") is an individual, and the principal of plaintiff. Scheel does business in the State of Washington.

3.     Defendant HoodStock Ranch, LLC ("HoodStock"), is a limited liability company, organized and operating under the laws of the State of Washington, and doing business in Klickitat County, State of Washington.

COMPLAINT –1

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547
Facsimile: (360) 750-7548

4.      Defendants Mark Gordon Heron and Mary Kathleen Heron ("Herons") are husband and wife, the principals of HoodStock, and residents of Hood River County, State of Oregon.

5.      Jurisdiction and venue are proper in this court.

7.      Plaintiff and HoodStock entered into a purchase and sale agreement on or about October 28, 2019, whereby plaintiff was seller and HoodStock was buyer, of certain real property located in Klickitat County, State of Washington. A true copy of the purchase and sale agreement is attached as Exhibit A.

8.      The purchase price was $1,500,000.00. HoodStock was to pay the entire price, in cash, at the closing of the transaction. On the date of the closing, however, defendants claimed they could only pay $1,000,000.00, and insisted that plaintiff accept a $500,000.00 promissory note for the remainder of the purchase price. Because plaintiff had purchased other property in reliance on HoodStock's representation that the full sales price would be paid at closing, plaintiff had no choice but to accept the promissory note and close.

9.      Defendants therefore executed and delivered to plaintiff the promissory note attached as Exhibit B. The note obligated defendants to pay plaintiff the principal sum of $500,000.00 within 90 days, plus interest at the rate of 2% per annum, plus an additional loan fee of $6,000.00.

10.     Even before payment was due, plaintiff declared defendants to be in default of their obligations under the promissory note. A true copy of plaintiff's notice of default, dated February 25, 2020, is attached as Exhibit C. With that notice, plaintiff accelerated all amounts owed per the terms of the promissory note and demanded payment on or before March 26, 2020.

11.     As of February 25, 2020, the amount due under the note began to accrue interest at the default rate of 18% per annum.

COMPLAINT –2

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547
Facsimile:  (360) 750-7548

1    12.    Defendants failed to pay all of any part of the sums owed under the promissory

2    note by March 26, 2020.  A late fee of 5% of the balance owed therefore also became due.

3    **FIRST CLAIM FOR RELIEF**

4    **(Breach of Promissory Note - Plaintiff)**

5    13.    Plaintiff realleges the allegations contained paragraphs 1 through 12.

6    14.    Defendants' failure to pay the sums owed under the promissory note constitutes a

7    breach of the promissory note.  As the result of defendants' breach of the promissory note,

8    plaintiff has been damaged in the principal amount of $506,000.00, plus prejudgment interest at

9    2% per annum from December 19, 2019, through February 24, 2020, in the amount of $3,521.20,

10   plus prejudgment interest at 18% per annum from February 25, 2020, to the date of judgment in

11   the amount of $249.53 per day, plus a contractual late fee of $25,000.00.

12   15.    Pursuant to the terms of the promissory note, plaintiff is entitled to recover

13   reasonable attorney fees and expenses.

14   **SECOND CLAIM FOR RELIEF**

15   **(Breach of Promissory Note – Scheel)**

16   16.    Plaintiffs reallege the allegations contained in paragraphs 1 through 5.

17   17.    On or about December 18, 2019, defendant HoodStock executed a second

18   promissory note in favor of Scheel, a true copy of which is attached as Exhibit D.

19   18.    The note was in the principal amount of $77,250.00, and was payable on or before

20   April 20, 2020.

21   19.    HoodStock has failed and refused to pay any part of the promissory note.  The

22   note is therefore in default.

23   20.    HoodStock's failure to pay the sums owed under the promissory note constitutes a

24   breach of the promissory note.  As the result of HoodStock's breach of the promissory note,

25

COMPLAINT –3

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547
Facsimile:  (360) 750-7548

1    Scheel has been damaged in the principal amount of $77.250.00, plus prejudgment interest at the

2    statutory rate of 12% per annum from December 18, 2019 to the date of judgment.

3                                    **THIRD CLAIM FOR RELIEF**

4                                             **(Fraud)**

5        21.    Plaintiffs realleges the allegations contained in paragraphs 1 through 12.

6        22.    At the time HoodStock entered into the purchase and sale agreement, defendants

7    had no intention of bringing $1,500,000.00 in cash to the closing of the purchase and sale

8    transaction.

9        23.    Similarly, defendants never had any intention of paying plaintiff the sums called

10   for in the first promissory note.  Instead, defendants intended that HoodStock would acquire

11   possession of and title to the subject real property by paying plaintiff only $1,000,000.00.

12       24.    HoodStock also had no intention to pay Scheel the sum called for in the second

13   promissory note.  Instead, HoodStock intended that HoodStock would acquire possession of and

14   title to the subject personal property without paying Scheel anything.

15       25.    Plaintiff actually and reasonably relied on HoodStock's agreements to perform the

16   purchase and sale in accordance with its terms when it entered into the agreement.  Plaintiff also

17   actually and reasonably relied on defendants' agreement to pay the promissory note in

18   accordance with its terms when it agreed to accept the promissory note and close.  Scheel also

19   actually and reasonably relied on HoodStock's agreement to pay the second promissory note in

20   accordance with its terms when he agreed to accept the promissory note and transfer possession

21   of the personal property.

22       26.    Defendants knew that plaintiffs were relying on their agreements and

23   representations when HoodStock entered into the purchase and sale agreement, when defendants

24   executed and delivered the promissory note, and when HoodStock executed and delivered the

25

COMPLAINT –4

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547
Facsimile:  (360) 750-7548

1  second promissory note.  Defendants intended that plaintiffs so rely, and intended to defraud

2  plaintiffs out of their property without paying the agreed price.

3      27.    As the result of defendants' fraudulent acts, plaintiff has been damaged in the

4  principal amount of $506,000.00, plus prejudgment interest at 2% per annum from December 19,

5  2019, through February 24, 2020 in the amount of $3,521.20, plus prejudgment interest at 18%

6  per annum from February 25, 2020, to the date of judgment in the amount of $249.53 per day,

7  plus a contractual late fee of $25,000.00.

8      28.    As the result of HoodStock's breach of the second promissory note,  Scheel has

9  been damaged in the principal amount of $77.250.00, plus prejudgment interest at the statutory

10  rate of 12% per annum from December 18, 2019 to the date of judgment.

11      WHEREFORE, plaintiffs pray for the following relief:

12      1.    On its first or third claim for relief, Tooth Acres, LLC prays for a money

13  judgment against defendants, jointly and severally, in the principal amount of $506,000.00, plus

14  prejudgment interest at 2% per annum from December 19, 2019, through February 24, 2020, in

15  the amount of $3,521.20, plus prejudgment interest at 18% per annum from February 25, 2020,

16  to the date of judgment in the amount of $249.53 per day, plus a contractual late fee of

17  $25,000.00, plus an award of reasonable attorney fees per the terms of the purchase and sale

18  agreement and the promissory note;

19      2.    On his second or third claim for relief, Scheel prays for a money judgment against

20  defendant HoodStock in the principal amount of $77.250.00, plus prejudgment interest at the

21  statutory rate of 12% per annum from December 18, 2019 to the date of judgment

22      3.    For their costs and expenses incurred herein; and

23      4.    For such other and further relief as the Court may deem just and proper.

24  //

25  //

COMPLAINT –5

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA 98666-0611
(360) 750-7547
Facsimile: (360) 750-7548

1    DATED this _15_ day of May, 2020.

2                                          HEURLIN, POTTER, JAHN, LEATHAM,
                                            HOLTMANN & STOKER, P.S.
3

4    _____

5                                          Stephen G. Leatham, WSBA #15572
                                            Of Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT –6

Heurlin, Potter, Jahn, Leatham, Holtmann & Stoker, P.S.
211 E. McLoughlin Boulevard, Suite 100
PO Box 611
Vancouver, WA  98666-0611
(360) 750-7547
Facsimile:  (360) 750-7548

1    COMMERCIAL ASSOCIATION OF REALTORS  OREGON/SW WASHINGTON

2    PURCHASE AND SALE AGREEMENT AND RECEIPT FOR EARNEST MONEY

3    (Oregon-Commercial Form)

Dated: *10-28-2019*

4

5    BETWEEN: *TOOTH ACRES, LLC*                                                    ("Seller")

6    Address: *11818  SE  MILL PLAIN BLVD  SUITE 106*
7    *VANCOUVER, WA  98684*
8
9    AND: *HOODSTOCK RANCH, LLC,*                                               ("Buyer")

10    Address: *176 E. JEWETT BLVD   PO BOX 2290*
11    *WHITE SALMON, WA  98672*

12            Buyer agrees to buy and acquire and Seller agrees to sell, assign and convey on the
13    following  terms:  (i)  the  real  property  and  all  improvements  thereon  commonly  known  as
14            *267  86  ROAD  TROUT LAKE, WA  98650*
15    *PARCEL #*                                                                 and located  at
16    *LEGAL  DESCRIPTION  ATTACHED*                                              in    the
17    City of *TROUT LAKE*            , County of *KLICKITAT*
18    legally described on Exhibit A attached hereto (the "Property"). If no legal description is attached, Buyer
19    and  Seller  will  attach  a  legal  description  upon  receipt  and  reasonable  approval  by  both  parties  of  the
20    Preliminary  Commitment  or,  if  applicable,  the  Survey,  and  if  applicable  (ii)  all  of  Seller's  right,  title  and
21    interest  in  and  to  certain  lease's)  by  which  the  Property  is  demised  as  described  on  Exhibit  B  attached
22    hereto.  As  partial  consideration  for  the  assignment  of  the  Lease(s)  to  Buyer,  at  the  Closing  (as  defined  in
23    Section  7  hereof)  Buyer  shall  assume  all  of  the  obligations  of  the  Lessor  under  the  Lease(s)  which  first
24    accrue  on  or  after  the  Closing  Date  (as  defined  in  said  Section  7).  The  parties  shall  accomplish  such
25    assignment  and  assumption  by  executing  and  delivering  to  each  other  through  Escrow  an  Assignment  of
26    Lessor's  Interest  Under  Lease  substantially  in  the  form  of  Exhibit  C  attached  hereto  (the  "Assignment")
27    The  occupancy  of  the  Property  by  said  Lessee(s)  are  hereinafter  sometimes  referred  to  as  the "Tenancies".

28            1    Purchase Price.                                                *1,500,000*
29    *ONE MILLION FIVE HUNDRED x 00/100*
30    dollars ($ *1,500,000* ) (the Purchase Price) payable as follows:
31    *ALL CASH @ CLOSING          to Seller  No  carry back*
32
33
34

35            1.1    Earnest Money Deposit.        Upon  execution  of  this  Agreement,  Buyer  shall  deliver
36    to the Escrow Holder as  defined herein, for the account of  the Buyer $ *10,000*            as earnest
37    money  (the  "Earnest  Money")  in  the  form  of  __  cash  or  __  check  or  _L_  promissory note (the
38    "Note"). If  the  Earnest  Money  is  in  the  form  of  a  check  being  held  undeposited  by  the  __  Listing __

1

**Exhibit A**
**Page 1 of 8**

1    Selling Firm, it shall be deposited no later than 5 PM Pacific Time three days after execution of the
2    Agreement by Buyer and Seller in the __ Listing __ Selling Firm's Clients' Trust Account ✓ to the
3    Escrow. If the Earnest Money is in the form of the Note, it shall be due and payable no later than 5 PM
4    Pacific Time one day after ✓ execution of the Agreement by Buyer and Seller or __ satisfaction or
5    waiver by Buyer of the conditions to Buyer's obligation to purchase the Property set forth in this
6    Agreement or __ at Closing or __ Other: _____
7    _____ If the Note or
8    check is not redeemed and paid in full when due, then (i) the Note or check shall be delivered and
9    endorsed to Seller (if not already in Seller's possession), (ii) Seller may collect the Earnest Money from
10   Buyer, either pursuant to an action on the Note or an action on this Agreement and (iii) this Agreement
11   shall be of no further force or effect. The purchase and sale of the Property shall be accomplished
12   through an escrow (the "Escrow") which Seller has established or will establish with _____
13   __ *KLICKITAT COUNTY TITLE* _____ (the Title Company") and the Earnest Money shall be
14   deposited with __ Title Company or __ Other: _____ The Earnest
15   Money shall be applied to the payment of the purchase price for the Property at Closing. Any interest
16   earned on the Earnest Money shall be considered to be part of the Earnest Money. The Earnest Money
17   shall be returned to the Buyer in the event any condition to Buyer's obligation to purchase the Property shall
18   fail to be satisfied or waived through no fault of Buyer.

19

20       2   <u>Conditions to Purchase.</u>    Buyer's obligation to purchase the Property is conditioned on the
21   following: __ none and/or __ *APPROVAL TO HEAT BUYERS SATISFACTION*
22   *Satisfactory title report* _____
23   _____
24   _____
25   _____ and/or __ Buyer's approval
26   of the results of its Property inspection described in Section 3 below. If Buyer has not given written
27   waiver of these conditions, or stated in writing that these conditions have been satisfied, by written
28   notice given to Seller within _____ 30 _____ days after the Execution Date (defined below),
29   the Agreement shall be deemed automatically terminated, the Earnest Money shall be promptly returned
30   to Buyer, and thereafter, except as specifically provided to the contrary herein, neither party shall have
31   any further right or remedy hereunder.

32       3   <u>Property Inspection.</u>    Seller shall permit Buyer and its agents, at Buyer's sole expense and
33   risk, to enter the Property, at reasonable times after reasonable prior notice to Seller and after prior
34   notice to the tenants of the Property as required by the tenant's leases, to conduct any and all inspections,
35   tests, and surveys concerning the structural condition of the improvements, all mechanical, electrical and
36   plumbing systems, hazardous materials, pest infestation, soils conditions, wetlands, American with
37   Disabilities Act compliance, and all other matters affecting the suitability of the Property for Buyer's
38   intended use and/or otherwise reasonable related to the purchase of the Property, including the economic
39   feasibility of such purchase. Buyer shall indemnify, hold harmless, and defend Seller from all liens,
40   costs, and expenses, including reasonable attorneys' fees and experts' fees, arising from or relating to
41   Buyer's entry on and inspection of the Property. This agreement to indemnify, hold harmless, and defend
42   Seller shall survive closing or any termination of this Agreement.

1    4    Seller's Documents. Within ___5___ days after the Execution Date, Seller shall deliver
2    to Buyer, at Buyer's address shown below, legible and complete copies of the following documents and
3    other items relating to the ownership, operation, and maintenance of the Property, to the extent now in
4    existence and to the extent such items are within Seller's possession or
5    control: ___FOREST AG REPORT, WELL REPORT___
6

7    5    Title Insurance.    Within ___5___ days after the Execution Date, Seller
8    shall deliver to Buyer a preliminary title report from the Title Company (the "Preliminary
9    Commitment"), together with complete and legible copies of all documents shown therein
10    as exceptions to title, showing the status of Seller's title to the Property. Buyer shall have ___5___ days
11    after receipt of a copy of the Preliminary Commitment within which to give notice in writing to Seller of
12    any objection to such title or to any liens or encumbrances affecting the Property. Within ___5___
13    days after the date of such notice from Buyer, Seller shall give Buyer written notice of whether it is
14    willing and able to remove the objected-to exceptions. Within ___5___ days after the date of
15    such notice from Seller, Buyer shall elect whether to (i) purchase the Property subject to those objected-to
16    exceptions which Seller is not willing or able to remove or (ii) terminate this Agreement.
17    On or before the Closing Date (defined below), Seller shall remove all exceptions to which
18    Buyer objects and which Seller agrees Seller is willing and able to remove. All remaining exceptions set
19    forth in the Preliminary Commitment and agreed to by Buyer shall be deemed "Permitted Exceptions".
20    The title insurance policy to be delivered by Seller to Buyer at closing shall contain no exceptions other
21    than the Permitted Exceptions and the usual preprinted exceptions contained in an owner's standard
22    form title insurance policy.

23    6    Default Remedies.    If the conditions, if any, to Buyer's obligation to close this transaction
24    are satisfied or waived by Buyer and Buyer nevertheless fails, through no fault of Seller, to close the
25    purchase of the Property, Seller's sole remedy shall be to retain the Earnest Money paid by Buyer. In the
26    event Seller fails, through no fault of Buyer, to close the sale of the property, Buyer shall be entitled to
27    pursue any remedies available at law or in equity, including without limitation, the remedy of
28    specific performance.

29    7    Closing of Sale    The sale shall be closed ___ on or before ___DEC 15, 2019___
30    or ___ ___ days after Execution Date (the "Closing Date") in escrow at the Title Company.
31    The sale shall be deemed "closed" when the document conveying title to the Property is recorded and the
32    Purchase Price (increased or decreased, as the case may be, by the net amount of credits and debits to
33    Seller's account at Closing made by the Escrow Holder pursuant to the terms of this Agreement) is
34    disbursed to Seller. At Closing, Buyer and Seller shall deposit with the Title Company all documents
35    and funds required to close the transaction in accordance with the terms of this Agreement. At Closing,
36    Seller shall deliver a certification in a form approved by Buyer that Seller is not a "foreign person"
37    as such term is defined in the Internal Revenue Code and the Treasury Regulations
38    promulgated under the Internal Revenue Code. If Seller is a foreign person and this transaction is not
39    otherwise exempt from FIRPTA regulation, the Title Company shall be instructed by the parties to
40    withhold and pay the amount required by law to the Internal Revenue Service. At Closing, Seller shall
41    convey fee simple title to the Property to Buyer by _✓_ statutory warranty deed or ___
42    ___ (the "Deed"). If this Agreement provides for the
43    conveyance by Seller of a vendee's interest in the Property by a contract of sale, Seller shall deposit with
44    the Title Company (or other mutually acceptable escrow) the executed and acknowledged Deed, together

3

1   with written instructions to deliver such deed to Buyer upon payment in full of the purchase
2   price. At Closing, Seller shall pay for and deliver to Buyer a standard form owner's policy of title
3   insurance (the "Policy") in the amount of the Purchase Price insuring fee simple title to the Property in
4   Buyer subject only to the Permitted Exceptions and the standard preprinted exceptions contained in a
5   standard form policy.

6       8   Closing Costs;   Prorates.   Seller shall pay the premium for the Policy. Seller and Buyer
7   shall each pay one-half of the escrow fees charged by the Title Company, any excise tax, and any
8   transfer tax. Real Property taxes for the tax year in which the transaction is closed, assessments (if a
9   Permitted Exception), personal property taxes, rents on existing tenancies paid for the month of Closing,
10   interest on assumed obligations, and utilities shall be prorated as of the Closing Date. Prepaid rents,
11   security deposits, and other unearned refundable deposits regarding the Tenancies shall be assigned and
12   delivered to Buyer at Closing, ✓Seller ✓ Buyer ___ N/A shall be responsible for payment of taxes
13   interest, and penalties, if any, upon removal of the Property from any special assessment or program.

14       9   Possession. Buyer shall be entitled to exclusive possession of the Property, subject to the
15   Tenancies existing as of the Closing Date, ✓ on the Closing Date or ___
16

17       10   Condition of Property.  Seller represents that, to the best of Seller's knowledge without
18   specific inquiry, Seller has received no written notices of violation of any laws, codes, rules, or
19   regulations applicable to the Property ("Laws"), and Seller is not aware of any such violations or any
20   concealed material defects in the Property which cost more than $ _500_ to repair or correct. Risk
21   of loss or damage to the Property shall be Seller's until Closing and Buyer's at and after Closing. No
22   agent of Seller nor any agent of Buyer has made any representations regarding the Property . The real
23   estate licensees named in this Agreement have made no representation to any party regarding the
24   condition of the Property, the operations on or income from the Property, the Tenancies, or whether the
25   Property or the use thereof complies with Laws. Except for Seller's representations set forth in this
26   Section 11, Buyer shall acquire the Property "AS IS" with all faults and Buyer shall rely on the results of
27   its own inspection and investigation in Buyer's acquisition of the Property. It shall be a condition of
28   Buyer's obligation to close, and of Seller's right to retain the Earnest Money as of Closing that all of the
29   Seller's representations and warranties stated in this Agreement are materially true and correct on the
30   Closing Date. Seller's representations and warranties stated in this Agreement shall survive Closing for
31   one (1) year.

32       11   Personal Property. This sale includes the following personal property: ___
33          _SEE ADDENDUM_ or ___ the personal
34   property located on and used in commission with the Property and owned by Seller which Seller shall
35   itemize in a schedule. Seller shall deliver to Buyer such schedule within ___ days after the
36   Execution Date. Seller shall convey all personal property owned by Seller on or in the Property to Buyer
37   by executing and delivering to Buyer through Escrow a Bill of Sale substantially in the form of
38   Exhibit D attached hereto (the "Bill of Sale").

39       12   Agency Disclosure.  The following agency relationship(s) in this transaction is (are)
40   hereby consented to and acknowledged:

4

1        (a) _____ (selling real estate licensee) is the agent of
2  (check one) ___ Buyer exclusively as an agent of Buyer; ___ Seller exclusively as an agent of Seller; ___
3  both Seller and Buyer as set out in the in-company agreement.

4        (b) ___ _____ (listing agent if not the same as selling agent) is
5  the agent of (check one): ___ Seller exclusively as Seller's agent; ___ both Seller and Buyer as set out in
6  the in-company agreement.

7        (c) _____ (real estate licensee) both Seller and Buyer in a
8  limited dual agency relationship pursuant to separate agreement.

9

ACKNOWLEDGED

10        Buyer: _____    Dated: _____
11        Buyer: _____    Dated: _____    Designated
12        Seller: _____    Dated: _____    Broker(s)
13        Seller: _____    Dated: _____    Initials

14      13   Notices.   Unless otherwise specified, any notice required or permitted in, or related to, this
15  Agreement must be in writing and signed by the party to be bound. Any notice or payment will be
16  deemed given when personally delivered or delivered by facsimile transmission (with electronic
17  confirmation of delivery), or will be deemed given on the day following delivery of the notice by
18  reputable overnight courier or three (3) days after mailing in the U.S. mails, postage prepaid, by the
19  applicable party to the address of the other party shown in this Agreement, unless that day is a Saturday,
20  Sunday, or legal holiday, in which event it will be deemed delivered on the next following business day.
21  If the deadline under this Agreement for delivery of a notice or payment is a Saturday, Sunday, or legal
22  holiday, such last day will be deemed extended to the next following business day.

23      14   Assignment.  Buyer ___ may assign ___ may not assign ___ may assign, if the assignee is
24  an entity owned and controlled by Buyer (may not assign, if no box is checked) this Agreement or
25  Buyer's rights under this Agreement without Seller's prior written consent. If Seller's consent is required
26  for assignment, such consent may be withheld in Seller's sole discretion.

27      15   Attorney's Fees.  In the event a suit, action, arbitration, or other proceeding of any nature
28  whatsoever, including without limitation any proceeding under the U.S. Bankruptcy Code, is instituted,
29  or the services of any attorney are retained, to interpret or enforce any provision of this Agreement or with
30  respect to any dispute relating to this Agreement, the prevailing party shall be entitled to recover from
31  the losing party its attorneys' paralegals', accountants', and other experts' fees and all other fees, costs,
32  and expenses actually incurred and reasonably necessary in connection therewith. In the event of suit,
33  action, arbitration, or other proceeding, the amount thereof shall be determined by the judge or arbitrator,
34  shall include fees and expenses incurred on any appeal or review, and shall be in addition to all other
35  amounts provided by law.

36      16   Statutory Land Use Disclaimer.   THE PROPERTY DESCRIBED IN THIS
37  INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING
38  STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS,
39  WHICH, IN FARM AND FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING
40  OF A RESIDENCE AND WHICH LIMIT LAWSUITS AGAINST FARMING OR FOREST
41  PRACTICES AS DEFINED IN ORS 30.930 IN ALL ZONES. BEFORE SIGNING OR ACCEPTING

5

1  THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK
2  WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY
3  APPROVED USES AND THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES.

4      17  <u>Miscellaneous.</u>  Time is of the essence of this Agreement. The facsimile transmission of
5  any signed document including this Agreement shall be the same as delivery of an original. At the
6  request of either party, the party delivering a document by facsimile will confirm facsimile transmission
7  by signing and delivering a duplicate original document. This Agreement may be executed in two or
8  more counterparts, each of which shall constitute an original and all of which together shall constitute
9  one and the same Agreement. This Agreement contains the entire agreement and understanding of the
10 parties with respect to the subject matter of this Agreement and supersedes all prior and
11 contemporaneous agreements between them with respect thereto. Without limiting the provisions of
12 Section 15 of this Agreement, this Agreement shall be binding upon and shall inure to the benefit of the
13 parties and their respective successors and assigns. The person signing this Agreement on behalf of
14 Buyer and the person signing this Agreement on behalf of Seller each represents, covenants and warrants
15 that such person has full right and authority to enter into this Agreement and to bind the party for whom
16 such person signs this Agreement to the terms and provisions of this Agreement. This Agreement shall
17 not be recorded unless the parties otherwise agree.

18     18  <u>Addendums; Exhibits.</u>  The following named addendums and exhibits are attached to this
19 Agreement and incorporated within this Agreement: ___ none or __*ADDENDUM*_____
20

21     19  <u>Time for Acceptance.</u>  Seller has until 5:00 p.m. Pacific Time on
22 _*10-30-2019*_ to accept this offer. Acceptance is not effective until a copy of this
23 Agreement which has been signed and dated by Seller is actually received by Buyer. If this offer is not
24 so accepted, it shall expire and the Earnest Money shall be promptly refunded to Buyer and thereafter
25 neither party shall have any further right or remedy against the other.

26     20  <u>Seller's Acceptance and Brokerage Agreement.</u>  Seller agrees to sell the Property on the
27 terms and conditions in this Agreement and further agrees to pay a commission in the total amount
28 computed in accordance with the listing agreement or other commission agreement dated
29 _____ between Seller and _____. If there
30 is no written listing agreement or other commission agreement, Seller agrees to pay a
31 commission of __ _____ percent ( %) of the purchase price
32 or __ $ _____. Seller and_____ agree that
33 the commission is deemed earned as of the date this Agreement is signed by Seller and Buyer. Unless
34 otherwise provided in a separate written agreement, the real estate commission is due on the Closing
35 Date or upon Seller's breach of this Agreement, whichever occurs first. If the Earnest Money is forfeited
36 and retained by Seller in accordance with this Agreement, in addition to any other rights the Listing
37 Agent may have, the Listing Agent shall be entitled up to fifty percent (50%) of the Earnest Money, not
38 to exceed any agreed commission, and Seller hereby assigns to the listing agent such amount.

39     21  <u>Execution Date.</u>  The Execution Date is the later of the two dates shown beneath the
40 parties' signatures below.

41     22  <u>Governing Law.</u>  This agreement is made and executed under, and in all respects shall be
42 governed and construed by the laws of the State of Oregon.

6

**Exhibit A**
**Page 6 of 8**

1  CONSULT YOUR ATTORNEY. THIS DOCUMENT HAS BEEN PREPARED FOR SUBMISSION
2  TO YOUR ATTORNEY FOR REVIEW AND APPROVAL PRIOR TO SIGNING. NO
3  REPRESENTATION OR RECOMMENDATION IS MADE BY THE REAL ESTATE
4  LICENSEES INVOLVED WITH THIS DOCUMENT AS TO THE LEGAL
5  SUFFICIENCY OR TAX CONSEQUENCES OF THIS DOCUMENT.
6
7  THIS FORM SHOULD NOT BE MODIFIED WITHOUT SHOWING SUCH MODIFICATIONS BY
8  REDLINING, INSERTION MARKS, OR ADDENDA.

9   Buyer: _Hancock Ranch, LLC_          Seller: _____

10  _____                  _____

11  By _Mary Kathleen Ahern_             By _____

12  Title _Managing Member_              Title _____

13  Execution Date _10/28/2019_          Execution Date _____

14  Time of Execution _2:00_             Time of Execution _____

15  Home Phone _(541) 806-3900_          Home Phone _____

16  Office Phone _____     Office Phone _____

17  Address _____          Address _____

18  _____                  _____

19  _____                  _____

20  Fax No. _____          Fax No. _____

21
22  E-mail _KATHY. PREMIEREPROPERTIES_   E-mail _____
23          _@ GMAIL. COM_
24
25
26  Broker's approval _____
27
28

7

## ADDENDUM TO REAL ESTATE SALE AGREEMENT

| | |
|---|---|
| This is an Addendum to: ✓ Real Estate Sale Agreement ___ Seller's Counter Offer ___ Buyer's Counter Offer | 1 |
| Re: Real Estate Sale Agreement No. _10292019_    Dated _10-28-19_ Addendum No. _"A"_ | 2 |
| | 3 |
| Buyer: _HOODSTOCK RANCH, LLC_ | 4 |
| Seller: _TOOTHACRES, LLC_ | 5 |
| The real property described as: _267 8G ROAD   TROUT LAKE, WA 98650_ | 6 |
| | 7 |

SELLER AND BUYER HEREBY AGREE THE FOLLOWING SHALL BE A PART OF THE REAL ESTATE SALE    8
AGREEMENT REFERENCED ABOVE.    9

_BUYER & SELLER AGREE TO DETERMINE ANY PERSONAL_
_PROPERTY TO BE INCLUDED IN SALE OUTSIDE OF ESCROW_    11
_WITH EXCEPTION OF GRADER, WATER/OTHER, ROLLER AT_    12
_NO ADDITIONAL CHARGE._    13
    14
_BUYER & SELLER AGREE TO EARLIER CLOSING DATE IF_    15
_APPRAISAL IS COMPLETED, PRIOR TO CLOSING DATE._    16
    17
_SELLER RECOGNIZES ONE OF BUYERS MANAGING MEMBERS_    18
_IS A LICENSED PRINCIPAL REAL ESTATE BROKER, PURCHASING_    19
_FOR OWN PURPOSE - NO REAL ESTATE FEES IN TRANSACTION_    20

| | | |
|---|---|---|
| Buyer Signature | Date _10/28/2019_   A.M. 2:00 P.M. | 37 |
| Buyer Signature | Date    A.M.    P.M. | 38 |
| Seller Signature | Date    A.M.    P.M. | 39 |
| Seller Signature | Date    A.M.    P.M. | 40 |
| Listing Licensee | Selling Licensee | 41 |
| Listing Firm Broker Initials/Date | Selling Firm Broker Initials/Date | 42 |

Addendum Page ___ of ___ Pages    43

**Exhibit A**
**Page 8 of 8**

# PROMISSORY NOTE

$500,000.00 _____                December 19, 2019

                                                            Date

Goldendale  WA _____

                        City, State

FOR VALUE RECEIVED, HoodStock Ranch, LLC, a Washington Limited Liability Company; and

Mark Gordon Heron and Mary Kathleen Heron, husband and wife, together hereinafter "Maker"

promises to pay to  Tooth Acres, LLC, a Washington Limited Liability Company hereinafter "Holder"

or order at 11818 SE Mill Plain Blvd #106  Vancouver  WA 98684

or other such place as may be designated by the Holder fi·om time to time, the principal sum of  Five Hundred

Thousand and no/100 Dollars  ($500,000.00), with interest thereon from 19th day of December, 2019,

on the unpaid principal at the rate of Two percent  (2.0%) per annum as follows:

1.   **INSTALLMENT PAYMENTS:**  Maker shall pay no installment payments.

2.   **DUE DATE:** The entire balance of this Note together with any and all interest accrued thereon shall be due and payable in full no later than 90 days from closing.

3.   **DEFAULT  INTEREST:**   After maturity, or failure to make any payment, any unpaid principal shall accrue interest at the rate of 18% per annum OR the maximum rate allowed by law, whichever is less, during such period of Maker's default under this Note.

4.   **ALLOCATION  OF PAYMENTS:**   Each payment shall be credited first to any late charge due, second to interest and the remainder to principal.

5.   **PREPAYMENT:**   Maker may prepay all or part of the balance owed under this Note at any time without penalty.

6.   **CURRENCY:** All principal and interest payments shall be made in lawful money of the United States.

7.   **LATE  CHARGE:** If Holder receives any portion of payment more than fifteen (15) days after  its  due  date, then  a  late payment  charge  of five (5) percent  shall  be added to the scheduled payment.

8.   **DUE ON SALE:**  *(OPTIONAL-Not* applicable  unless initialed by Holder and Maker  to this Note)  If this **Note  is secured by a Deed  of Trust or any other instrument securing repayment  of  this Note,  the property described  in such security instruments may  not be sold or transfened   without the Holder's consent.**  Upon breach of this provision, Holder may declare all sums due under this Note immediately due and payable, unless prohibited by applicable law.

Maker (Initials)  Maker (Initials)                    Holder (Initials)

9. **ACCELERATION:** If Maker fails to make any payment owed under this Note, or if Maker defaults under any Deed of Trust or any other instruments securing repayment of this Note, and such default is not cured within thirty (30) days after written notice of such default, then Holder may, at its option, declare all outstanding sums owed on this Note to be immediately due and payable, in addition to any other rights or remedies that Holder may have under the Deed of Trust or other instruments securing repayment of this Note.

10. **ATTORNEYS' FEES AND COSTS:** Maker shall pay all costs incurred by Holder in collecting sums due under this Note after a default, including reasonable attorneys' fees, whether or not suit is brought including but not limited to those incurred in mediation, arbitration, litigation, bankruptcy and appeal. If Maker or Holder sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceedings including but not limited to those incurred in mediation, arbitration, litigation, bankruptcy and appeal.

11. **WAIVER OF PRESENTMENTS:** Maker waives presentment for payment, notice of dishonor, protest and notice of protest.

12. **NON-WAIVER:** No failure or delay by Holder in exercising Holder's rights under this Note shall be a waiver of such rights.

13. **SEVERABILITY:** If any clause or any other portion of this Note shall be determined to be void or unenforceable for any reason, such determination shall not affect the validity or enforceability of any other clause or portion of this Note, all of which shall remain in full force and effect.

14. **INTEGRATION:** There are no verbal or other agreements which modify or affect the terms of this Note. This Note may not be modified or amended except by written agreement signed by Maker and Holder.

15. **CONFLICTING TERMS:** In the event of any conflict between the terms of this Note and the terms of any Deed of Trust or other instruments securing payment of this Note, the terms of this Note shall prevail.

16. **EXECUTION:** Each Maker executes this Note as a principal and not as a surety. If there is more than one Maker, each such Maker shall be jointly and severally liable under this Note.

17. **COMMERCIAL PROPERTY:** *(OPTIONAL-Not* applicable unless initialed by Holder and Maker to this Note) Maker represents and warrants to Holder that the sums represented by this Note are being used for **business, investment or commercial purposes, and not for personal, family or household purposes.**

Maker (Initials)    Maker (Initials)

Holder (Initials)

ORAL AGREEMENTS: ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, TO EXTEND CREDIT, OR TO FOREBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

18. **DEFINITIONS:** The word Maker shall be construed interchangeably with the words Borrower or Payer and the word Holder shall be construed interchangeably with the words Lender or Payee. In this Note, singular and plural words shall be construed interchangeably as may be appropriate in the context and circumstances to which such words apply.

19. **ADDITIONAL TERMS AND CONDITIONS:** As set forth on the attached "Exhibit A" which is

Page 5 of 7

**Exhibit B**
**Page 2 of 4**

incorporated by this reference.

**20. THIS NOTE IS SECURED BY 2nd POSITION DEED OF TRUST OF EVEN DATE.**

Maker (signatures)

HoodStock Ranch, LLC

By Mark Gordon Heron. Managing Member

Mark Gordon Heron, personally

HoodStock Ranch, LLC

By Mary Kathleen Heron. Managing Member

Mary Kathleen Heron, personally

Maker's address for all notices given by Holder under this Note: 1749 22"d Street, Hood River. OR 97031

---

DO NOT DESTROY THIS NOTE

WHEN PAID this original Note together with the Deed of Trust securing the same, must be surrendered to the Trustee for cancellation and retention before any reconveyance can be processed.

Page 6 of 7

**Exhibit B**
**Page 3 of 4**

EXHIBIT A TO PROMISSORY NOTE

In addition to the principal and interest balloon payment due no later than 90 days from the closing date, Maker also agrees to pay to Holder an additional fee of Six Thousand and no/00 dollars.   This additional fee shall have the same due date as the aforementioned balloon payment

HoodStock Ranch, LLC                                    HoodStock Ranch, LLC

_____                        _____
By Mark Gordon Heron. Managing Member                  By Mary Kathleen Heron, Managing Member


_____                        _____
Mark Gordon Heron, personally                          Mary Kathleen Heron, personally



Two Centerpointe Dr., 6ᵗʰ Floor
Lake Oswego, OR 97035

Tel. (503) 598-7070
Fax (503) 598-7373

www.jordanramis.com

Thomas B. Eriksen
Admitted in Oregon and Washington
bnd.eriksen@jordanramis.com
OR Direct Dial: (503) 598-5590
WA Direct Dial: (360) 567-3903

February 25, 2020

VIA EMAIL, FIRST CLASS MAIL, AND
CERTIFIED MAIL RETURN RECEIPT REQUESTED

Hoodstock Ranch LLC
176 E. Jewett Blvd
White Salmon WA 98672

Mark G. Heron
Mary Kathleen Heron
1749 22nd Street
Hood River OR 97031

Re:   Tooth Acres, LLC/Hoodstock Ranch LLC – NOTICE OF DEFAULT
      December 19, 2019 Second Position Deed of Trust
      Our File No. 46918-73583

Dear Mr. and Mrs. Heron:

This office represents Tooth Acres, LLC in connection with that certain Promissory Note dated December 19, 2019 wherein Hoodstock Ranch LLC and Mark Gordon Heron and Mary Kathleen Heron, husband and wife, are the makers and Tooth Acres, LLC is the holder and that certain Second Position Deed of Trust dated December 19, 2019 wherein Hoodstock Ranch LLC is the grantor and Tooth Acres, LLC is the beneficiary.

Notice is hereby given that you are in default under the terms of the Second Position Deed of Trust due to your failure to provide for the beneficiary to be the first loss payee under the fire insurance policy covering the property as required by Section 3 of the Second Position Deed of Trust.

Pursuant to Section 9 of the Promissory Note, all amounts due under the Promissory Note, including principal and accrued interest, are hereby accelerated and are now due and payable 30 days from the date of this letter.

Failure to pay the full amount due under the terms of the Promissory Note on or before March 26, 2020 will result in a foreclosure and collection action being filed against you.

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

Very Truly Yours,

JORDAN RAMIS PC

Thomas B. Eriksen

cc:   Tooth Acres, LLC

46918-73583 4828-7252-6518.1

Lake Oswego, Oregon   |   Vancouver, Washington   |   Bend, Oregon

**Exhibit C**
**Page 1 of 1**

# WASHINGTON PROMISSORY NOTE

### Pursuant to *WA ST 19.52.020*

FOR VALUE RECEIVED, *Woodstock Ranch LLC* ("Borrower") promises to pay to *Gene Schell* ("Lender") *Seventy Seven Thousand Two Hundred Fifty* Dollars ($ *77,250* ) in principal, plus interest at a rate of ____ % annually on the unpaid balance as set forth herein.

1. **PAYMENT TERMS** (*Choose one*):

   ☐ - Borrower shall make ____ payments in the amount of _____ Dollars ($_____) per (month/year) on _____, 20____.
   ☑ - Borrower shall make *1* payments in the amount of *77,250* Dollars ($ *77,250* ) per (month/year) and a **final payment** in the amount of _____ Dollars ($_____) on _____, 20____.

   ☑ - Borrower shall pay a lump sum on *April 20*, 20 *20*.

2. **TERM:** The term of this Loan is from *12-18-2019* to *4-20-2020*.

3. **PREPAYMENT:** Borrower may prepay the loan without any penalty.

4. **PAYMENT APPLICATION:** All payments shall first be applied to interest and then to principal.

5. **SECURITY** (*Choose one*):

   ☐ - This note shall be secured by a (mortgage/deed of trust) on Borrower's premises located at _____ until the note is paid in full

   ☑ - This note shall be secured by a UCC-1 Financing statement and security agreement giving Lender a secured interest in Borrower's equipment, fixtures, inventory and accounts receivable of _____(Borrower's business) until the note is paid in full.

   ☐ - This note is unsecured. *SELLER TO RECORD AS COLLATERAL AGAINST PROPERTY LOCATED AT 267 86 RD, TROUT LAKE, WA 98650*

6. **ACCELERATION:** Lender may require Borrower to pay the entire balance of the unpaid principal and accrued interest immediately if the Borrower is more than ____ days late in making a payment.

   *SEE ATTACHED DETAILED LIST OF EQUIPMENT*

**Nothing herein shall be considered legal advice. You are encouraged to seek legal advice from an attorney licensed to practice in your jurisdiction before using this form.**

Copyright © 2015 FreeDownloads.net. All Rights Reserved.

*_____, Managing Member*          *12-18-2019*
*Woodstock Ranch, LLC*

**Exhibit D**
**Page 1 of 2**

| | |
|---|---|
| LOADER   40,000 | 11 |
| M. TOOLS & V-PLOW | 12 |
| | 13 |
| SUPPLIES  1,000 | 14 |
| | 15 |
| OIL TANK   100 | 16 |
| | 17 |
| EXCAVATOR  16,000 | 18 |
| | 19 |
| | 20 |
| STEEL BEAMS & GATES  2,000 | 21 |
| | 22 |
| MISCELLANEOUS FURNITURE  2,000 | 23 |
| | 24 |
| MINI TRUCK   2,000 | 25 |
| | 26 |
| FISH   500 | 27 |
| | 28 |
| EXCISE TAX   13,350 | 29 |
| | 30 |
| TOTAL   $ 77,250 | 31 |

| | | | | | |
|---|---|---|---|---|---|
| Buyer Signature | Hawkford Ranch, LLC | Date 12/18/2019 | A.M. 5:30 P.M. | 37 |
| Buyer Signature | Madarin Nubian, LLC. | Date | A.M. ___ P.M. | 38 |
| Seller Signature | | Date | A.M. ___ P.M. | 39 |
| Seller Signature | | Date | A.M. ___ P.M. | 40 |
| Listing Licensee | | Selling Licensee | | 41 |
| Listing Firm Broker Initials/Date | | Selling Firm Broker Initials/Date | | 42 |
| | | Addendum Page ___ of ___ Pages | | 43 |

**Exhibit D**
**Page 2 of 2**