UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TOOTH ACRES, LLC, a Washington limited liability company, and GENE SCHEEL, an individual, | NO. 1:20-CV-3091-TOR |
| Plaintiffs, | ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| HOODSTOCK RANCH, LLC, a Washington limited liability company, and MARK GORDON HERON and MARY KATHLEEN HERON, husband and wife, | |
| Defendants. | |

BEFORE THE COURT are Plaintiffs' Motion for Partial Summary Judgment on Choice of Law (ECF No. 90), Plaintiff Tooth Acres, LLC's Motion for Partial Summary Judgment on Good Faith and Fair Dealing Counterclaim (ECF No. 93), Plaintiffs' Motion for Partial Summary Judgment on Applicability of UDCPA (ECF No. 97), and Defendants' Motion for Partial Summary Judgment

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 1

(ECF No. 100).  Defendant's Motion (ECF No. 100) was submitted for consideration with oral argument.  Pursuant to LCivR 7(i)(3)(B)(iii), the Court found oral argument unnecessary and struck the hearing set for December 3, 2021. ECF No. 128.  The Court has reviewed the record and files herein, and is fully informed.

For the reasons discussed below, Plaintiffs' Motion for Partial Summary Judgment on Choice of Law (ECF No. 90) is granted in part and denied in part, Plaintiff Tooth Acres, LLC's Motion for Partial Summary Judgment on Good Faith and Fair Dealing Counterclaim (ECF No. 93) is granted, Plaintiffs' Motion for Partial Summary Judgment on Applicability of UDCPA (ECF No. 97) is granted, and Defendants' Motion for Partial Summary Judgment (ECF No. 100) is granted in part and denied in part.

## BACKGROUND

This case concerns a 2019 real estate transaction in which Plaintiffs sold property in Klickitat County, Washington, to Defendants.  *See* ECF No. 1-2. Plaintiffs' complaint raises two claims for breach of promissory note and fraud. ECF No. 1-2 at 3-5, ¶¶ 13-28.  Defendants' amended answer raises the following counterclaims: (1) violation of the Uniform Commercial Code ("UCC"), (2) violation of Oregon's Unlawful Debt Collection Practices Act ("OUDCPA"), (3)

intentional infliction of emotional distress, (4) trespass, and (5) breach of the duty of good faith and fair dealing.  ECF No. 54 at 13-17, ¶¶ 59-92.

Plaintiffs move for summary judgment on choice of law, Defendants' breach of good faith and fair dealing claim, and Defendant's OUDCPA claim.  ECF Nos. 90, 93, 97.  Defendants move for summary judgment on Plaintiffs' claims for pre-judgment interest, Plaintiff's claim for a late fee, and Defendants' UCC and trespass claims.  ECF No. 100.  The parties timely filed their respective responses and replies.  *See* ECF Nos. 103, 111, 113, 115, 119, 123-125.  Except where noted, the following facts are not in dispute.[1]

Plaintiffs Tooth Acres, LLC ("Tooth Acres") and Dr. Gene Scheel, the principal and sole member of Tooth Acres, are citizens of the State of Washington. ECF No. 77 at 2, ¶ 1; ECF No. 92 at 2, ¶ 3.  Defendant Hoodstock Ranch, LLC ("Hoodstock") is a Washington limited liability company but its sole members, Defendants Mark and Mary Heron, are residents of the State of Oregon.  ECF No. 77 at 2, ¶ 1; ECF No. 92 at 2, ¶ 5.

---

[1]    The Court draws from the parties' statement of facts as well as the proposed pretrial order that is incorporated into the briefing, which sets forth the facts agreed upon by the parties.  *See* ECF No. 102 at 1, ¶ 41 (citing ECF No. 77).

On or about October 27-28, 2019, Tooth Acres and Hoodstock entered into a purchase and sale agreement for a home and real property in Trout Lake, Washington for the amount of $1.5 million.  ECF No. 77 at 2, ¶ 2.  The purchase and sale agreement, on an "Oregon-Commercial Form", provided: "This agreement is made and executed under, and in all respects shall be governed and construed by the laws of the State of Oregon."  ECF No. 1-2 at 12, ¶ 22; ECF No. 114 at 2, ¶ 6.  While Plaintiffs assert all purchase and sale negotiations and meetings took place in the State of Washington, Defendants assert Ms. Heron negotiated the contract via telephone from Oregon and the parties met once in Oregon at a McDonald's in Hood River.  ECF No. 92 at 2, ¶ 8; ECF No. 114 at 2, ¶¶ 6, 8.  While Plaintiffs assert this purchase was for business and/or commercial purposes, Defendants assert the purchase was for personal, family or household purposes.  ECF No. 99 at 2, ¶ 3; ECF No. 116 at 2, ¶ 3.

On or about December 18, 2019, Hoodstock executed a promissory note in favor of Dr. Scheel in the amount of $77,250 for the purchase of various items of personal property identified in the note, including a loader and excavator.  ECF No. 77 at 2, ¶ 4.

On or about December 19, 2019, the purchase and sale transaction closed, where Defendants paid Tooth Acres $1,000,000 of the purchase price.  ECF No. 77 at 2, ¶ 3.  That same day, Defendants executed a promissory note for the remaining

1   $500,000 of the purchase price, which was payable to Tooth Acres ninety (90)

2   days from closing.  *Id.*  Following the sale and execution of the promissory notes,

3   Defendants did not timely retire the note obligations to Tooth Acres, did not make

4   any payments to Tooth Acres on the promissory note, and Hoodstock has not made

5   any payments to Dr. Scheel on the promissory note for equipment.  ECF No. 77 at

6   2, ¶ 5.

7        In February 2020, Tooth Acres filed a UCC-1 financing statement and

8   amended UCC-1 financing statement regarding at least some of the personal

9   property that was seized or repossessed, as discussed *infra*.  ECF No. 77 at 3, ¶ 8.

10       On or about February 25, 2020, Tooth Acres declared Defendants in default

11  of their obligations under the promissory note, alleging that Defendants failed "to

12  provide for the beneficiary to be the first loss payee under the fire insurance policy

13  covering the property as required by Section 3 of the Second Position Deed of

14  Trust."  ECF No. 77at 2-3, ¶ 6.

15       In March 2020, Dr. Scheel texted the Herons a picture of several guns, with

16  the message "I'm guarding my toilet paper here."  ECF No. 99 at 2, ¶ 7.  In late

17  April, Ms. Heron texted the same picture back to Dr. Scheel with no accompanying

18  writing.  ECF No. 99 at 2, ¶ 8; ECF No. 116 at 3, ¶ 8.  Defendants maintain that

19  Dr. Scheel sent other inappropriate communications to the Herons, including a

20  picture of a fire.  *Id.*  Plaintiffs assert that Dr. Scheel had told the Herons before

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 5

April 2020 about two fires he experienced, but Defendants maintain it was "threatening commentary" that they received in Oregon in connection with Defendants default, and the Herons stated there were "no need for threats" and they felt threatened or "alarmed." ECF No. 99 at 2, ¶ 9; ECF No. 116 at 3, ¶ 9. Dr. Scheel's text messages were sent from the State of Washington. ECF No. 92 at 2, ¶ 7.

On March 24, 2020, Dr. Scheel emailed Defendants' lender, who is in Oregon. ECF No. 95 at 1, ¶ 1. While Plaintiffs contend the email did not damage Defendants' business relationship with the lender, Defendants assert the communication disrupted and "caused noise" with the relationship with the first position lender. *Id.*; ECF No. 112 at 1-2, ¶ 1.

On March 25, 2020, Ms. Heron contacted Klickitat County by telephone to find out what permits had been issued for the subject property. ECF No. 95 at 2, ¶ 2. On March 30, 2020, the County responded, noting which permits the County had for Defendants property. ECF No. 95 at 2, ¶ 3.

In April 2020, Dr. Scheel communicated with Klickitat County regarding the permits for Defendants' property. ECF No. 95 at 2, ¶ 4. While Plaintiffs contend the County was already aware of the "permit situation" at the time of the communication, Defendants dispute this where Ms. Heron raised a "limited" number of issues to the County and Dr. Scheel raised additional issues not raised

by Ms. Heron, and Dr. Scheel anticipated that his communication would "result in the initiation of enforcement proceedings" and that his "goal" was to use Klickitat County "to try to force [Defendants] to refinance [the] note." ECF No 95 at 2, ¶ 4; ECF No. 112 at 2, ¶ 3. Defendants assert Klickitat County initiated an enforcement proceeding against the Defendants as a direct result of Dr. Scheel's complaint to the County regarding the property and improvements Dr. Scheel sold in the transaction. ECF No. 112 at 2, ¶ 2. At present, Klickitat County has not required Defendants to tear down any structures or obtain further permits. ECF No. 95 at 2, ¶ 5. Defendants agree that no action has been taken, but assert the enforcement proceeding remains open and unresolved and Defendants have incurred time, attention, stress, and professional fees to defend the proceeding. ECF No. 112 at 3, ¶ 4. While Plaintiffs assert Defendants have taken no action to obtain the lacking permits, Defendants assert they "filed this action" to seek damages to help pay for the professional services needed to remove the "permitting cloud" over the subject property. ECF No. 95 at 2, ¶ 6; ECF No. 112 at 3, ¶ 5.

On April 21, 2020, between 12:01 AM and 3:00 AM, Dr. Scheel seized or repossessed certain items of personal property located on the subject real property in Washington State. ECF No. 77 at 3, ¶ 7; ECF No. 92 at 2, ¶ 2. Dr. Scheel coordinated with up to 20 people that night to retrieve the items, and Dr. Scheel broke through two locked gates, one of which was on Defendants property, and

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 7

used a key to access property inside a locked barn structure. ECF No. 102 at 2, ¶¶

2-3. Dr. Scheel asserts he had a contractual right to access the property and he

took steps to ensure there was no confrontation, including notifying the Sheriff of

the planned repossession, conducting the repossession at night, verifying no one

was present on the property, and bringing witnesses to the property. ECF No. 105

at 2. Defendants dispute Plaintiff's assertions, stating that the contract only

allowed limited access and Dr. Scheel used an undisclosed key after he said

Defendants had a "unique" key (engraved with "do not duplicate"). *See* ECF No.

122 at 2-5, ¶ 1; ECF No. 120-2 at 2. The contract provision at issue states: "Buyer

will allow Seller access to and use of one (1) out building on the Property for a

period of six (6) months after closing to store Seller's personal property. Such use

and access of such out building shall be without charge." ECF No. 120-1 at 2, ¶ 3.

The personal property seized include a 1978 CAT 980B loader, a Dresser

555 payloader, a Champion 750A road grader, a Suzuki 660 Carry micro truck,

and eight foot high "v plow", two excavator buckets, a hydraulic rock hammer, an

herbicide application trailer, I-beams and racking, galvanized light posts, and

various tools and cabinets of tools. *Id.* To date, Dr. Scheel has not returned any of

the seized or repossessed personal property. *Id.* Dr. Scheel sold one of the items

of seized or repossessed personal property, a loader with plow, for $30,000 on or

1  about February 2, 2021. *Id.* The parties dispute whether the UCC filings apply to

2  all of the seized or repossessed personal property. ECF No. 102 at 3, ¶ 4.

3  On or about April 30, 2020, Dr. Scheel filed a complaint with the Oregon

4  Real Estate Agency, alleging that Ms. Heron's conduct in connection with the

5  transaction violated Oregon law. ECF No. 114 at 2, ¶ 6.

## DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling

on a motion for summary judgment, the court must only consider admissible

evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The

party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). The burden then shifts to the non-moving party to identify

specific facts showing there is a genuine issue of material fact. *See Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla

of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

1    For purposes of summary judgment, a fact is "material" if it might affect the

2    outcome of the suit under the governing law.  *Id.* at 248.  Further, a dispute is

3    "genuine" only where the evidence is such that a reasonable jury could find in

4    favor of the non-moving party.  *Id.*  The Court views the facts, and all rational

5    inferences therefrom, in the light most favorable to the non-moving party.  *Scott v.*

6    *Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted

7    "against a party who fails to make a showing sufficient to establish the existence of

8    an element essential to that party's case, and on which that party will bear the

9    burden of proof at trial."  *Celotex*, 477 U.S. at 322.

10    If the nonmoving defendant can show that "it cannot present facts essential

11    to justify its opposition, the court may: (1) defer considering the motion or deny it;

12    (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue

13    any other appropriate order."  Fed. R. Civ. P. 56(d).

14    **B.  Choice of Law**

15    Plaintiffs move for partial summary judgment on the grounds that

16    Washington law governs all claims in this dispute.  ECF No. 90 at 1.  Defendants

17    assert that while Washington law applies to some of the claims at issue, the Court

18    should apply Oregon law to the following counterclaims: (1) violation of the

19    Oregon Unlawful Debt Collection Practices Act ("OUDCPA") with punitive

20    damages, (2) intentional infliction of emotional distress ("IIED") with punitive

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 10

damages, and (3) breach of the implied covenant of good faith and fair dealing. ECF No. 113 at 4.  Therefore, based on Defendants' stipulation, Washington law applies to the remaining claims, including Plaintiff's claims and Defendants' counterclaims for violation of the Uniform Commercial Code ("UCC") and trespass.  *See id.*

"Claims arising in tort are not ordinarily controlled by a contractual choice of law provision."  *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (citing *Consolidated Data Terminals v. Applied Digital Data Systems*, 708 F.2d 385, 390 n.3 (9th Cir. 1983)).  "Rather, they are decided according to the laws of the forum state."  *Id.*  A federal court sitting in diversity applies the forum state's choice-of-law rules – here, Washington.  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).

Where parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of the other state.  *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wash. 2d 954, 967 (2014).  Absent an actual conflict, Washington law presumptively applies.  *Erwin v. Cotter Health Centers*, 161 Wash. 2d 676, 692 (2007).  If there is an actual conflict, Washington utilizes the "most significant relationship test."  *FutureSelect*, 180 Wash. 2d at 967.  Washington courts follow depecage, where the substantive law of different states may apply to different

1    issues, i.e. the choice of law analysis is claim specific.  *FutureSelect Portfolio*

2    *Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 175 Wash. App. 840, 856, n.15

3    (2013); *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175 (W.D. Wash.

4    2006).

5         Under the "most significant relationship test" for tort claims, courts will 1)

6    "evaluate the contacts with each interested jurisdiction" under Restatement

7    (Second) of Conflict of Laws § 145 and any section relevant to the causes of

8    action[2] and 2) "evaluate the interests and policies of the potentially concerned

9    jurisdictions" under Restatement § 6.   *Woodward v. Taylor*, 184 Wash. 2d 911,

10   918-19 (2016).  This requires "a subjective analysis of objective factors" so that

11   "the ultimate outcome, in any given case, depends upon the underlying facts of that

12   case." *Id.* at 966, n.12 (quoting *Southwell v. Widing Transp., Inc.*, 101 Wash. 2d

13   200, 204 (1984)).

14        In evaluating the contact with each interested jurisdiction, the Court

15   evaluates the following contacts according to their relative importance with respect

16   to the particular issue: "(a) the place where the injury occurred, (b) the place where

17   the conduct causing the injury occurred, (c) the domicile, residence, nationality,

18

19   [2]    Here, the Restatement section relevant to Defendants' tort counterclaims is

20   § 146 (personal injuries).

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 12

place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145(2) (1971).  For personal injury claims, "the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."  Restatement (Second) of Conflict of Laws § 146.  Personal injuries include physical harm and mental disturbances.  *Id.*, comment b.

In evaluating the interests and policies of the potentially concerned jurisdictions, the Court may look at the following relevant factors: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.  Restatement (Second) of Conflict of Laws § 6.

//

//

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 13

1          *1.   Tort Counterclaims*

2          Plaintiffs identify an actual conflict between Oregon and Washington law

3  regarding the availability of punitive damages for Defendants' tort counterclaims.

4  ECF No. 90.  Washington law permits punitive damages only if explicitly

5  permitted by statute where Oregon law permits punitive damages if a party

6  satisfies certain evidentiary standards.  *Compare Barr v. Interbay Citizens Bank*,

7  96 Wash. 2d 692, 697 (1982) *with* ORS 31.730(1).  Therefore, the Court will apply

8  the most significant relationship test to the tort counterclaims.

9          First, Plaintiffs' injuries for the alleged emotional damages and business

10  interference largely occurred in Oregon.  ECF No. 113 at 9.  This factor favors

11  applying Oregon law.

12          Second, the place where the conduct causing the injuries occurred was

13  within Washington.  ECF No. 99 at 2, ¶¶ 7, 9; ECF No. 95 at 2, ¶ 4.  The Court

14  finds this is a more significant contact based on its relative importance with respect

15  to punitive damages: the acting party's (Dr. Scheel) conduct is the focus for

16  punitive damages.  *See* Restatement (Second) of Conflict of Laws § 145; *Bryant v.*

17  *Wyeth*, 879 F. Supp. 2d 1214, 1225 (W.D. Wash. 2012). This factor favors

18  applying Washington law.

19          Third, Plaintiffs and Defendant Hoodstock are Washington citizens and

20  residents but the Herons are Oregon citizens with residences both in Washington

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 14

and Oregon.  ECF No. 77 at 2, ¶ 1; ECF No. 92 at 2, ¶ 3.  The parties dispute whether Dr. Scheel knew the Herons lived in Oregon.  ECF No. 113 at 10.  This factor does not tip the scale in favor of either state.

Fourth, the parties dispute where the relationship between the parties is centered, with Plaintiffs contending the relationship is exclusively centered in Washington and Defendants pointing to the contacts in Oregon.  *See* ECF No. 92 at 2, ¶ 8; ECF No. 114 at 2, ¶¶ 6, 8.  Considering the facts center on the sale of real property in Washington, both parties have residences in Washington, and Dr. Scheel's conduct occurred within Washington for the purpose of recouping money owed in Washington, the Court finds the parties' relationship is centered in Washington.  This factor favors applying Washington law.  On balance, this Court finds Washington has the most significant contacts in this case.

As to public policy, even assuming the contacts were evenly balanced, Washington has an interest in applying its law to this case.  Washington has a strong policy against punitive damages.  *See Bryant v. Wyeth*, 879 F. Supp. 2d 1214, 1225 (W.D. Wash. 2012).  The conduct at issue for punitive damages occurred in Washington based on a relationship centered in Washington.  While Oregon has an interest in protecting its residents from harm suffered in its state, the interest is mitigated where the harm is allegedly a result of Defendants' own wrongful conduct causing harm in Washington.

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 15

1    In sum, the Court finds Washington law applies to Defendants'

2    counterclaims sounding in tort.  As a result, Defendants' claim under Oregon's

3    Unfair Debt Collection Practices Act must be dismissed.  Plaintiffs' motion for

4    summary judgment on this claim, ECF No. 97, is accordingly granted.

5            *2.  Contract Counterclaim*

6            A claim for breach of the implied covenant of good faith and fair dealing

7    sounds in contract, not tort.  *See NOVA Contracting, Inc. v. City of Olympia*, 191

8    Wash. 2d 854, 866 (2018); *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*,

9    320 Or. 638, 645 (1995).  A choice of law analysis is generally not required where

10   parties agree to a governing law by contract.  *See Brown v. MHN Gov't Servs.,*

11   *Inc.*, 178 Wash. 2d 258, 263 (2013); *CACV of Colorado, LLC v. Stevens*, 248 Or.

12   App. 624, 645 (2012).

13           Here, the contract at issue contains the following provision: "This agreement

14   is made and executed under, and in all respects shall be governed and construed by

15   the laws of the State of Oregon."  ECF No. 1-2 at 12, ¶ 22; ECF No. 114 at 2, ¶ 6.

16   Based on the agreement, the Court finds that Oregon law applies to Defendants'

17   counterclaim sounding in and arising out of contract.  *CACV of Colorado*, 248 Or.

18   App. at 645.  Plaintiffs' challenge to the choice of law provision in its reply brief to

19   the good faith and fair dealing claim is discussed *infra*.

20   //

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 16

## C.  Good Faith and Fair Dealing

Plaintiff Tooth Acres moves for summary judgment on Defendants'
counterclaim for breach of the implied covenant of good faith and fair dealing on
the grounds that there are no facts to demonstrate (1) Tooth Acres breached any
particular contract provision and (2) Dr. Scheel's communications caused or could
have caused Defendants' claimed damages.  ECF No. 93 at 2.  Defendants assert
summary judgment should be denied where (1) Oregon law imposes an implied
covenant of good faith and fair dealing in every contract and (2) there are genuine
issues of material fact on damages and causation.  ECF No. 111 at 7.

### 1.  *Implied Duty of Good Faith and Fair Dealing*

In its motion, Plaintiffs assert Washington law does not impose a "free
floating" duty of good faith to cooperate.  ECF No. 93 at 3.  Defendants assert that
they had a reasonable expectation that Plaintiffs "would not take steps to actively
undermine the value of the property, or place its structures at risk of condemnation
or civil penalty, and certainly not without first discussing, and cooperating, with
Defendants."  ECF No. 111 at 14.  In reply, Plaintiffs assert the purchase and sale
agreement, including the choice of law provision merged into the deed and is no
longer operative.  ECF No. 124 at 2.

//

//

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 17

1          a.  Merger

2          Under the doctrine of merger, when a deed is delivered, it "supersedes the

3    contract as to all its provisions made pursuant to the terms of the latter."

4    *Archambault v. Ogier*, 194 Or. App. 361, 369 (2004) (internal citation and brackets

5    omitted).  However, provisions in the contract "that are not included in the deed

6    and do not affect the title, possession, quantity, or emblements of the land are

7    deemed collateral to the promise to convey … and merge only to the extent that the

8    parties intended the deed to be the final memorial of their bargain."  *Id.* (internal

9    citations and quotation marks omitted).

10         A choice of law provision does not affect the title, possession, quantity, or

11   emblements of the land, and is consequently not merged into the deed.  *See*

12   *Archambault v. Ogier*, 194 Or. App. 361, 369 (2004).  Therefore, the provision

13   remains operative and Oregon law applies to the breach of the duty of good faith

14   claim.

15         b.  Implied Duty of Good Faith

16         Under Oregon law, every contract contains an implied duty of good faith.

17   *Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp.*, 320 Or. 638, 645 (1995).

18   The duty is to be applied in a manner that will effectuate the objectively reasonable

19   expectation of the parties.  *Id.*  "The obligation of good faith does not vary the

20   substantive terms of the bargain … nor does it provide a remedy for an

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 18

1   unpleasantly motivated act that is expressly permitted by contract or statute." *U.S.*

2   *Nat'l Bank of Or. v. Boge*, 311 Or. 550, 567 (1991). Instead, the duty facilitates

3   "performance and enforcement in a manner that is consistent with the terms of the

4   contract." *Brockway v. Allstate Prop. & Cas. Ins. Co.*, 284 Or. App. 83, 96 (2017)

5   (internal citation omitted). The determination of the parties' reasonable

6   expectations is generally a question of fact. *Arnett v. Bank of Am., N.A.*, 874 F.

7   Supp. 2d 1021, 1034-35 (D. Or. 2012) (collecting cases).

8           Here, viewed in the light most favorable to Defendants, there is no genuine

9   issue of material fact with respect to a breach of the duty of good faith and fair

10  dealing, and Plaintiffs are entitled to judgment as a matter of law. *Brockway*, 284

11  Or. App. at 96. The purchase and sale agreement imposed no ongoing duty on Dr.

12  Scheel to refrain from reporting alleged permitting and code violations on the

13  property after the sale and the implied duty of good faith cannot be construed in a

14  way that inserts new terms into the contract. *Id.* Defendants had no objectively

15  reasonable expectation based on the agreement that Dr. Scheel would be prohibited

16  from contacting Klickitat County regarding permit/code violations following

17  execution of the purchase and sale agreement. Without violation of an implied

18  duty, the Court need not address the arguments regarding causation and damages.

19  Therefore, summary judgment on Defendants' claim for breach of the implied duty

20  of good faith is appropriate.

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 19

1

**D.  Defendants' Motion**

2    Defendants move for summary judgment on (1) Plaintiffs' claim for pre-

3  judgment interest where the claims are unliquidated, (2) Plaintiffs' claim for a

4  $25,000 late fee as an unenforceable penalty, and (3) Defendants' counterclaims

5  for violation of the UCC and trespass on the grounds that Dr. Scheel's acts

6  constitute a breach of the peace as a matter of law.  ECF No. 100 at 6.  Plaintiffs

7  assert summary judgment is not appropriate on these claims, respectively, where

8  (1) pre-judgment interest is available on the liquidated promissory notes, (2) the

9  late fee was agreed to and a reasonable estimate of probable loss in event of

10  breach, and (3) Dr. Scheel had a right to enter the property, there was no

11  confrontation, and Defendants' counterclaim should be dismissed as a matter of

12  law.  ECF No. 103 at 2-6.

13    As an initial matter, the parties apply Washington law to issues relating to

14  the promissory notes.  *See* ECF Nos. 100, 103.  As discussed *supra*, Oregon law

15  governs the real estate transaction pursuant to the purchase and sale agreement.

16  However, the promissory notes are governed by Washington law.  *See* ECF No.

17  93-1 at 1; 91-4 at 2.  Moreover, the promissory note for $500,00 was not

18  incorporated into the Oregon purchase and sale agreement.  ECF No. 118-2.

19  Therefore, the Court finds Washington law applies to the promissory notes

20  pursuant to the language contained therein.

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 20

1          *1.   Pre-Judgment Interest*

2          In a diversity action, state law determines whether a party is entitled to

3    prejudgment interest.  *Lagstein v. Certain Underwriters at Lloyd's of London*, 725

4    F.3d 1050, 1055 (9th Cir. 2013).  Under Washington law, "whether prejudgment is

5    awardable depends on whether the claim is a liquidated or readily determinable

6    claim, as opposed to an unliquidated claim."  *Hansen v. Rothaus*, 107 Wash. 2d

7    468, 472 (1986) (internal citation omitted).  A claim is considered liquidated

8    "where the evidence furnishes data which, if believed, makes it possible to

9    compute the amount with exactness, without reliance on opinion or discretion."  *Id.*

10   at 472-73.  A claim is unliquidated "where the exact amount of the sum to be

11   allowed cannot be definitely fixed from the facts proved, disputed or undisputed,

12   but must in the last analysis depend upon the opinion or discretion of the judge or

13   jury as to whether a larger or a smaller amount should be allowed."  *Prier v.*

14   *Refrigeration Eng'g Co.*, 74 Wash. 2d 25, 32 (1968).  "Prejudgment interest

15   awards are based on the principle that a defendant 'who retains money which he

16   ought to pay to another should be charged interest upon it.'"  *Hansen*, 107 Wash.

17   2d at 473.  However, a defendant should not be required to pay prejudgment

18   interest under circumstances where they are unable to determine the amount owed.

19   *Kiewit-Grice v. State*, 77 Wash. App. 867, 873 (1995).

20

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 21

1       Under limited circumstances, interest on a liquidated claim may be reduced

2   by the amount of an unliquidated counterclaim.  *Mall Tool Co. v. Far West Equip.*

3   *Co.*, 45 Wash. 2d 158, 170 (1954).  This is the case where "the amount to which a

4   defendant is entitled as a counterclaim or setoff is for defective workmanship or

5   other defective performance by the plaintiff, of the contract on which his liquidated

6   or determinable claim is based, of a character such that the award of damages as

7   compensation is regarded as constituting either a reduction of the amount due to

8   the plaintiff or a payment to him." *Id.* at 177.  This rule is based "on the theory

9   that the plaintiff is entitled to interest only on the amount of which he has been

10  deprived of the use during the period of default." *Id.*

11      The parties dispute whether the rule set forth in *Mall Tool* applies only to

12  claims for defective workmanship or performance.  ECF Nos. 103, 119.  Many

13  cases apply *Mall Tool's* holding, by its express language, to cases for defective

14  workmanship or performance.  *See, e.g.*, *Gemini Farms LLC v. Smith-Kem*

15  *Ellensburg, Inc.*, 104 Wash. App. 267, 271 (2001); *Buckner, Inc. v. Berkey Irr.*

16  *Supply*, 89 Wash. App. 906, 917 (1998); *Jet Boats, Inc. v. Puget Sound Nat. Bank*,

17  44 Wash. App. 32, 40 (1986).  Defendants cite to at least one case, where a

18  Washington Court recognized *Mall Tool's* holding as more broadly applicable to

19  cases other than defective workmanship or performance.  *See Mitchell Int'l*

20  *Enterprises, Inc. v. Daly*, 33 Wash. App. 562, 567-68 (1983).

1    Here, it is undisputed that the promissory notes themselves are liquidated

2    sums.  However, it is also undisputed that the promissory note claims are subject to

3    a setoff where Dr. Scheel repossessed personal property that were the subject of

4    the notes.  The value of the personal property is disputed, and the parties anticipate

5    submitting trial exhibits and trial testimony.  ECF No. 100 at 9-11.  As a result, the

6    setoff is unliquidated because the disputed testimony will require opinion or

7    discretion of the fact finder.  *See Casey v. Chapman*, 123 Wash. App. 670, 684

8    (2004) (in order to overcome rebuttable presumption, creditor must either obtain a

9    fair and reasonable appraisal at or near the time of repossession or produce

10   convincing evidence of value).  However, the undisputed setoff for the value of the

11   repossessed equipment constitutes a reduction to the amount due to Plaintiffs.

12   While this case is distinguishable from *Mall Tool*, the award of prejudgment

13   interest on the balance of the amount owed and the repossessed collateral is

14   consistent with other Washington decisions not related to defective workmanship

15   or performance.  *See Walter Implement, Inc. v. Focht*, 42 Wash. App. 104, 106 n.

16   1(1985), *aff'd in part, rev'd in part on other grounds,* 107 Wash. 2d 553 (1987)

17   (subtracting repossessed collateral prior to application of prejudgment interest);

18   *Mitchell*, 33 Wash. App. at 567-68 (recognizing *Mall Tool* exception as applying to

19   cases other than defective workmanship and performance and "operates to reduce

20   the amount of plaintiff's claim for purposes of computing prejudgment interest").

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 23

This finding is also consistent with the policies underlying prejudgment interest: Defendants should not be required to pay prejudgment interest on sums that Dr. Scheel undisputedly seized and Dr. Scheel has not been deprived of the use or value of the repossessed collateral. *Mall Tool*, 45 Wash. 2d at 177; *Kiewit-Grice*, 77 Wash. App. at 873.

In sum, Plaintiffs are entitled to prejudgment interest on the amount following the reduction for the value of the seized personal property.

### 2. Late Fee[3]

Generally, Washington courts will uphold a liquidated damages provision unless it constitutes a penalty or is otherwise unenforceable. *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wash. 2d 881, 886 (1994). "[L]iquidated damages agreements fairly and understandingly entered into by experienced, equal parties with a view to just compensation for the anticipated loss should be enforced." *Id.* Such provisions "must be a reasonable forecast of just compensation for the harm that is caused by the breach." *Walter Implement, Inc. v. Focht*, 107 Wash. 2d 553, 559 (1987). Whether an amount is a reasonable forecast of just compensation

---

[3] The parties appear to agree that whether a late fee is unenforceable as a penalty is a question of law for the Court. *See* ECF No. 100 at 12 (citing WPI 303.07); ECF No. 103 at 4.

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 24

depends on the facts and circumstances of each case and is judged as of the time the contract was entered. *Id.* The sophistication of a party is relevant to the analysis where it "highlights the inequity of allowing [the party] to now challenge the provisions as penalties simply because they constitute too large a percentage of the contract price." *Wallace*, 124 Wash. 2d at 897.

Here, the $25,000 late fee was contained in the promissory note for $500,000. ECF No. 104 at 2, ¶ 2-3. At the time of executing the promissory note in December 2019, Dr. Scheel was also in the process of purchasing a property in Idaho. ECF No. 104 at 2, ¶ 3. While Defendants assert the discussion of Dr. Scheel needing a "hard money lender" to help cover the purchase came up after closing, Defendants do not dispute that they were aware that Dr. Scheel was in the process of purchasing a property. The Court finds the promissory note was knowingly entered into by relatively experienced, equal parties for a complex transaction and the $25,000 late fee is a reasonable forecast of the harm caused by a breach on a $500,000 note at the time of signing where Dr. Scheel was simultaneously in the process of another real estate transaction. Therefore, the fee is not an unenforceable penalty.

//

//

//

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 25

1        *3.   Two Counterclaims*

2             a.   <u>Trespass</u>

3        "A trespasser is a person who enters or remains upon the premises of another

4    without permission or invitation, express or implied."  ECF No. 74 at 27, Joint Jury

5    Instruction No. 23 (citing WPI 120.01).  For statutory trespass, "[e]very person

6    who goes onto the land of another and who removes valuable property from the

7    land, or wrongfully injures personal property, is liable to the injured party for

8    treble the amount of the damages caused by the removal or injury …. A person

9    acts 'wrongfully,' if the person intentionally and unreasonably commits the act or

10   acts while knowing, or having reason to know, that he or she lacks authorization to

11   so act."  *Id.* at 28, Joint Jury Instruction No. 24 (citing RCW 4.24.630(1)).

12       Here, Plaintiffs assert there can be no trespass where Dr. Scheel had

13   "permission" through a contractual right to enter the property.  ECF No. 103 at 4.

14   The relevant contract provision at issue provides: "Buyer will allow Seller access

15   to and use of one (1) out building on the Property for a period of six (6) months

16   after closing to store Seller's personal property."  ECF No. 94-2 at 2, ¶ 3.

17   Defendants assert this provision narrowly gave Dr. Scheel access to use one

18   building for Dr. Scheel to temporarily store hunting trophies, trophies which Dr.

19   Scheel had already removed from the property with the Heron's approval.  ECF

20   No. 122 at 2-5, ¶ 1.  Viewing the facts in the light most favorable to Plaintiffs,

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 26

1    there is a material question of fact as to whether Dr. Scheel exceeded the express

2    permission he was allowed to enter the property for storage purposes only.  *See*

3    *Shulgan v. Evangelical Lutheran Good Samaritan Soc.*, 131 Wash. App. 1008

4    (2006) (finding issues of fact regarding scope of permission to enter the property

5    remained).  Therefore, summary judgment on the trespass counterclaim is not

6    appropriate.

7              b.  <u>Breach of the Peace</u>

8              In order to prevail on a claim for violation of the UCC based on a breach of

9    the peace, a defendant must prove that some of the repossessed property was not

10   covered by a valid security instrument, or that the plaintiff breached the peace in

11   repossessing personal property.  ECF No. 74 at 19, Joint Proposed Jury Instruction

12   No. 15 (citing RCW 62A.9A-625(b)).  As to a claim for a breach of the peace:

13              A "breach of the peace" is a public offense done by violence, or one
             causing or likely to cause an immediate disturbance of the public
14           order.  To constitute a "breach of the peace" it is not necessary that
             the peace be actually broken, and if what is done is unjustifiable and
15           unlawful, tending with sufficient directness to break the peace, no
             more is required, nor is actual personal violence an essential element
16           of the offense. A "breach of the peace" also does not necessarily
             require a physical confrontation.

17

18   ECF No. 74 at 20, Joint Jury Instruction No. 16 (collecting cases).

19              The facts surrounding the claim for breach of peace are not in dispute.  Dr.

20   Scheel, with approximately twenty other individuals, entered Defendants' property

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ~ 27

between 12:01 AM and 3:00 AM, which required breaking one locked gate on the property and required access with a key to one barn structure.  While Plaintiffs contend Dr. Scheel had a legal right to access the property by contract and with a key, Defendants dispute the contract's scope gave him access in the manner used and that Defendants were unaware Dr. Scheel retained a key to buildings on the property.  *See* ECF No. 105 at 2; ECF No. 122 at 2-5, ¶ 1.

Here, the key undisputed fact is that Dr. Scheel verified the Herons (who live in Oregon) were not present at the property the night of the repossession.  ECF No. 105 at 2.  While there could be questions of fact as to Dr. Scheel's breaking of the gate and entering locked structures, there could be no breach of the peace where there was no violence or offense causing or likely to cause an immediate disturbance of the public order.  Where there was no one present on the property, there could be no possibility of violence or likelihood of an immediate public disturbance.  Therefore, Defendants' counterclaim must be dismissed as a matter of law.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiffs' Motion for Partial Summary Judgment on Choice of Law (ECF No. 90) is **GRANTED in part** and **DENIED in part**.

2.  Plaintiff Tooth Acres, LLC's Motion for Partial Summary Judgment on Good Faith and Fair Dealing Counterclaim (ECF No. 93) is **GRANTED**.

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 28

3.   Plaintiffs' Motion for Partial Summary Judgment on Applicability of UDCPA (ECF No. 97) is **GRANTED**.

4.   Defendants' Motion for Partial Summary Judgment (ECF No. 100) is **GRANTED in part** and **DENIED in part**.

5.   Defendants' counterclaims for violation of Oregon's Unfair Debt Collection Practices Act, breach of good faith and fair dealing, and violation of the Uniform Commercial Code for breach of the peace are **DISMISSED with prejudice**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED December 9, 2021.



THOMAS O. RICE
United States District Judge

ORDER ON THE PARTIES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ~ 29